UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-12100-GAO

COMPANION HEALTH SERVICES, INC., a Massachusetts corporation,
Plaintiff,

v.

MAJORS MOBILITY, INC., a Michigan corporation; MAJORS MEDICAL, INC., a Michigan corporation; MMS NORTHERN DETROIT, INC., a Michigan corporation; MAJORS MOBILITY-ZANESVILLE, LLC, a Michigan limited liability company; GEORGE KURTZ; MARY KAY REID; STUART SHERMAN; and JACOB & WEINGARTEN, P.C.,
Defendants,

and

J.P. MORGAN CHASE BANK, N.A.,
as Trustee-Process Defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, and
ORDER FOR JUDGMENT
March 31, 2011

O'TOOLE, D.J.

After trial on the matter, a jury found that the defendant, Majors Mobility, Inc., had breached four of its agreements with the plaintiff, Companion Health Services, Inc., and awarded Companion damages for three of the four breaches. Companion now seeks further recovery for unjust enrichment, interest payments, and violations of Chapter 93A of the Massachusetts General Laws ("Chapter 93A"). Companion also seeks judgment as a matter of law to recover additional damages not awarded by the jury. The defendant opposes recovery beyond the jury award. The Court finds and concludes as follows.

**I.    Findings of Fact**

Companion, a Massachusetts company, licenses locations within Wal-Mart stores to companies that sell durable medical equipment. Majors, a Michigan company operated by George Kurtz and Mary Kay Reid, entered with Companion into a number of these licensing agreements. In April 2005, Companion and Majors entered into such an agreement for a store in Mansfield, Ohio; in December 2006, for a store in Zanesville, Ohio; and in December 2006, for a store in Evansville, Indiana. Majors expressed interest in licensing three additional Wal-Mart locations as well.

Companion also had licensed twenty locations to a man named Scott Hirsh. By the fall of 2006, Hirsch was behind in his rent payments for those locations. On or about January 10, 2007, an associate of Hirsch told Jack Huls of Companion that Hirsch would shut down his twenty locations in the very near future if Hirsch did not receive certain concessions. Soon after this conversation, Huls contacted Kurtz and told him that Companion was at risk of defaulting on its agreements with Wal-Mart if Hirsch shut down his locations. Huls informed Kurtz that Companion would have to take over Hirsch's locations. He asked if Majors would be interested in succeeding Hirsch in those locations. Kurtz said that Majors would be interested in taking over the locations.

On January 17, 2007, Majors took over the twenty Hirsch locations, although the written terms of an agreement between Companion and Majors had not yet been finalized by the time of the takeovers. Lawyers from Companion and Majors then worked to capture their agreements in writing. On January 19, Kimberly Mairs of Companion signed the Master Agreement between the two parties. On January 30, 2007, Kurtz signed the Master Agreement and Equipment Agreement on behalf of Majors.

Problems soon arose. Within weeks of the signing, employees at certain of the locations were claiming that Majors had not paid them, and some locations under control of Majors were not opening for business. Majors was dissatisfied with the training and skills of the employees at its newly-acquired locations and with the quality of the inventory there. By late February 2007, Reid informed Companion that Majors intended to close down its locations. By March 1, 2007, Majors had vacated all twenty Hirsch locations as well as Major's three original locations.

The closure of these locations caused Companion significant economic damage and harmed Companion's valuable relationship with Wal-Mart. Companion was able to find replacement operators for some, but not all, of the locations that Majors had left. Companion was required to return unoccupied sites to Wal-Mart in a cleaned "white-box" condition.

On November 7, 2007, Companion commenced this suit against Majors, Kutz, Reid, and related entities. As noted, after trial, the jury found that Majors had breached the Master Agreement and the agreements for the Mansfield, Zanesville, and Evansville locations. The jury also found that Majors breached the implied covenant of good faith and fair dealing for those agreements. From these breaches, the jury found that Companion suffered the following damages: $968,036 with regard to the Master Agreement, $0 with regard to the Mansfield Agreement, $11,541 with regard to the Zanesville Agreement, and $63,932 with regard to the Evansville Agreement. The jury found that Majors had not breached the Equipment Agreement nor that agreement's covenant of good faith and fair dealing.

The parties now dispute whether Companion is entitled to damages under Chapter 93A and for unjust enrichment, whether Companion is entitled to additional recovery for its attorney fees and "white-box" fees, and whether Companion is entitled to damages for the breach of the

Mansfield Agreement. Companion also seeks, without opposition, interest on its award of damages.

## II. Conclusions of Law

### A. Chapter 93A

Section 11 of Chapter 93A provides that "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice" is entitled to relief. To determine whether an act or practice is unfair or deceptive under Chapter 93A, a court must focus primarily on "the nature of challenged conduct and on the purpose and effect of that conduct." Mass. Emp'rs Ins. Exch. v. Propac-Mass, Inc., 648 N.E.2d 435, 438 (Mass. 1995).

"A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000) (internal citations and quotations omitted); accord Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18-19 (1st Cir. 1985) (93A violation where defendant withheld money legally owed "as a form of extortion" to force plaintiff to do "what otherwise it could not be legally required to do"); Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 822 (Mass. 1991) (93A violation where defendant used a pretext "to coerce [plaintiff] into paying [defendant] more than the contract required"); Cmty. Builders, Inc. v. Indian Motorcycle Assocs., Inc., 692 N.E.2d 964, 978 (Mass. App. Ct. 1998) (93A violation where defendant withheld payments "all with a purpose of coercing" plaintiff into accepting a less favorable settlement).

4

In the present case, the defendants' actions did not amount to a violation of Chapter 93A. The defendants here originally operated three locations and, within a short time span, sought to begin operating over six times as many locations. The circumstances prompting the defendants' takeover of these locations—Hirsch's impending closure of his twenty locations—emphasize the time pressure under which the parties here were operating and the speed with which they had to make their decisions. Under such circumstances, where events were unfolding quickly and there was little time to make a full assessment of the situation, it is not entirely surprising that the defendants, though well-intentioned, misjudged their ability to assume capably these twenty new locations. The defendants' actions do not demonstrate an intent to coerce and do not rise to the level of commercial extortion. They demonstrate miscalculation and, at worst, poor business judgment. They do not constitute a basis for liability under Chapter 93A.

B.     Zanesville, Evansville, and Master Agreements

As for the Zanesville, Evansville, and Master Agreements, the jury awarded an amount greater than the amount Companion had argued was due for lost profits from the breach of each of these contracts.[1] Companion argues that the Court should award it amounts beyond those awarded by the jury to account for attorney fees and "white-box" fees. However, the fact that the jurors awarded an amount higher than the amount of profits lost from the breaches may indicate that the jurors already accounted for these fees in their award. At any rate, the jurors had a good deal of information about the financial issues, and it was up to them to make the assessment they adjudged appropriate. An award of additional fees is here unwarranted.

---

[1] The requested and awarded amounts are as follows: Master Agreement: $905,759 / $968,036; Zanesville Agreement: $7,775 / $11,541; Evansville Agreement: $43,932 / $63,932.

C.      Mansfield Agreement

As for the Mansfield Agreement, the jury found that Majors breached the contract but did not award the plaintiff any damages for that breach. Companion argues that no reasonable jury could have found a lack of damages here and therefore seeks to have the court set a damage amount for breach of the Mansfield agreement notwithstanding the jury verdict.

"A party seeking to overturn a jury verdict faces an uphill battle." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). "A motion for judgment as a matter of law only may be granted when, after examining the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, the record reveals no sufficient evidentiary basis for the verdict." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001). "This review is weighted toward preservation of the jury verdict, which stands unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it." Crowe v. Bolduc, 334 F.3d 124, 134 (1st Cir. 2003).

In the present case, a jury reasonably could find no damages arising from the defendants' breach of the Mansfield Agreement. As a general matter, a reasonable jury can find a breach but find no actual damages. See Flynn v. AK Peters, Ltd., 377 F.3d 13, 23 (1st Cir. 2004); Bartlett v. Keith, 90 N.E.2d 308, 309 (Mass. 1950). As for the present matter, a reasonable jury could have found that Companion profited from Majors' success under the Mansfield Agreement, see Trial Tr. vol. 5, 113:11-113:24, Aug. 23, 2010, that Companion benefited from Majors' significant initial investments in the Mansfield location, see Trial Tr. vol. 3, 75:3-75:18, Aug. 18, 2010, that Companion was able to find operators for the Mansfield locations to mitigate the harm caused when Majors left, see Trial Tr. vol. 5, 88:11-88:14, Aug. 23, 2010, and that Companion did not pay any "white-box" fees to clear that location, see Trial Tr. vol. 5, 69:16-69:19, Aug. 23, 2010.

Considering the evidence before it, a jury reasonably could have concluded that Companion was entitled to no damages for breach of the Mansfield Agreement.

Even where there are no *actual* damages awarded, a plaintiff may be entitled to *nominal* damages for a breach of a contract. See Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727, 737 (Mass. 1985). The plaintiff here, however, has expressed no interest in receiving merely nominal damages, and it is therefore unnecessary to amend the jury verdict and order entry of judgment for $1. See Forlano v. Hughes, 471 N.E.2d 1315, 1320 n.11 (Mass. 1984) ("Although the plaintiff might be entitled to nominal damages for the breach, he has not urged this point on us, and hence we do not think it necessary to order entry of judgment for $1.") (internal citation omitted).

The jury verdict will stand unamended.

### D. Unjust Enrichment

The jury found that Majors did not breach the Equipment Agreement with Companion. Companion nevertheless argues that it should be compensated for losses arising from that agreement because Majors was unjustly enriched. The plaintiff addresses this argument only in a perfunctory manner and fails to supply legal authority in support of its position. See Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005); see also Harriman v. Hancock Cnty., 627 F.3d 22, 28 (1st Cir. 2010) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). In any event, Companion apparently urges the Court to find unjust enrichment because Majors sold inventory and equipment that were "made available by Companion" and that were "received pursuant to the Equipment Agreement," Pl.'s Proposed Findings of Fact and Conclusions of Law 15 (dkt. no. 221), yet such allegations, even

7

if true, do not amount to enrichment so unjust as to merit legal remedy where there has been no breach of contract. See Brandt v. Wand Partners, 242 F.3d 6, 16 (1st Cir. 2001); Salamon v. Terra, 477 N.E.2d 1029, 1031 (Mass. 1985). After review of the record, the Court finds no cause to award damages for unjust enrichment here.

E. Interest

Companion has also argued that the Court must award interest on the judgments in this case, and Majors has not disputed either the appropriateness of such an award or the method by which Companion has calculated the amount. The Court therefore adopts the plaintiff's proposals, adjusted to fit more closely with the findings and conclusions in this opinion.

The defendants shall pay pre-judgment interest computed at the contract rate of one and one-half percent per month. For the Master Agreement, interest will be added starting on March 1, 2007 to the amount of $905,729; for the Zanesville Agreement, it will be added starting on November 7, 2007 to the amount of $7,775; and, for the Evansville Agreement, it will be added starting on November 7, 2007 to the amount of $43,932.

The defendants shall pay post-judgment interest in accordance with 28 U.S.C. § 1961.

F. Personal Liability

The defendants argue that only Majors is liable for breach of contract. In case there is confusion on the matter, the Court urges the defendants to be mindful of its June 9, 2010 ruling that the plaintiff may pierce the corporate veil to reach Kurtz and Reid. That ruling still holds.

## III. Conclusion

Accordingly, the plaintiff's motion (dkt. no. 221) for judgment as a matter of law is DENIED. The Court finds no unjust enrichment or violation of Chapter 93A. Interest shall be computed in accordance with this opinion.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge